Ejectment for 228 acres of land, and not guilty pleaded; the defendant having disclaimed all the lands to the north of the military boundary line. The plaintiff produced a grant to David Phillips, dated the 15th of September, 1787, and proved the lands in question to be the lands described therein; that Phillips conveyed to Robert Goodloe the said land, and that the lessors of the plaintiff are his heirs-at-law.
The defendant, who was also proved to be in possession, produced a grant, dated the 17th of November, 1794, and also an entry dated the 14th of April, 1784, "two thousand acres of land on the waters of Harpeth, about two miles south of the military line, to include the Buffaloe lick."
The land as run, begins at a tree one mile north of the lick; thence west, thence south, thence east, thence north, thence west to the beginning; making the beginning tree to stand in the middle of the north boundary line; that the survey included the land in question.
The plaintiffs' counsel then produced their entry, copied from the book in which the military entries were made, dated the 17th of October, 1783, stricken across with a pen, and 1784 placed after it. And they produced, from the secretary's office of North Carolina, a copy of the warrant returned with the survey on which the grant to Phillips issued, with an indorsement on the warrant of a location made for Phillips, on the 17th of October, 1783, in the same words as that which was in the military book, and was now produced from thence. Also the plat annexed to Phillips' grant purported to have been made upon a location dated the 17th of October, 1783. *Page 60 
The plaintiffs' counsel then stated, that the Court on a former occasion had said that the entry book could not be given in evidence, because by the law of this State the jury were to carry with them, when they retired, all such records as were given them in evidence; and that, on oyer, the record ought always to remain in one certain place; and if this jury could receive and carry it off, so could other juries; and as the book could not be given in evidence, the plaintiffs would not be allowed to give parol evidence by the keeper of the book, that this entry stood 85, and that other entries after this, as far as 88, and upwards of one hundred were dated in 1783; which fact proved that the entry 85 could not really have been upon the book after those of 1783, and of course must be misdated as to 1784, and that this evidence ought to be admitted because of the doubt raised by inspection of the copies.
But the Court, consisting of HUMPHREYS and POWEL, said this book is a record, and upon it depends all the titles for land in the military bounds. If we suffer one part of it to be explained by parol evidence, we must do so whenever it is called for, and shall thereby expose all such estates to be overturned by parol evidence.
This is an evil of too great magnitude to be endured; we will not let it in by making the decision that is now desired of us. The plaintiffs' counsel then offered to prove that, before the military entry book was ordered to be kept, it had been the common practice to make locations on the back of the warrants.
That would be to permit the same thing to be proved which we have just rejected; viz., that the true date of the entry is on the 17th of October, 1783, whereas we have just decided, that the date upon the book shall not be contradicted. This evidence cannot be received.
The plaintiffs' counsel then offered two certified copies of entries from the book, standing after the third entry, No. 85, which bore date in 1783. *Page 61